## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:                          )   Bankruptcy No. 08 B 02290
                                )   Chapter 13
SCOTT R. KOWALSKI,              )   Judge John H. Squires
                                )
            Debtor.             )

### MEMORANDUM OPINION

This matter comes before the Court on an application for compensation styled "Petition for Supplemental Attorney's Fees and Costs" filed by Edward P. Graham ("Graham"), as attorney for the debtor, Scott R. Kowalski (the "Debtor"), and the responses and objections thereto filed by the Debtor and Glenn Stearns, as the Standing Chapter 13 Trustee (the "Trustee"). Graham seeks $11,000 in fees plus $486.25 in costs. The Debtor contends that he paid Graham $3,500 in fees and concludes that the additional fees and costs are "egregious and not with[in] standards in the industry." The Trustee asserts that the fees sought by Graham are inconsistent with the Federal Rule of Bankruptcy Procedure 2016(b) statement (the "Rule 2016(b) statement") filed by Graham. The Rule 2016(b) statement provides that Graham agreed to accept $3,000 for his legal services in this case. Moreover, the Trustee notes that the dividend to unsecured creditors will be negatively impacted and reduced from the 81% dividend promised in the confirmed plan to 54.7% if the additional $7,500 in fees and costs are allowed. The Trustee further contends that this case was not difficult or novel and that some of the work performed by Graham and his associates was excessive and unnecessary. The Trustee concludes that only $3,000 should be allowed as originally disclosed by Graham in his Rule 2016(b) statement.

-2-

For the reasons set forth herein, the Court sustains the objections of the Debtor and the

Trustee and allows Graham to receive only $3,000 in fees for his services, as disclosed in the Rule

2016(b) statement. The balance of the compensation and costs requested in Graham's petition

for supplemental fees and costs, including the additional $500 paid to Graham by the Debtor

(post-petition and without disclosure or authorization from the Court) is disallowed as excessive

and contrary to the Rule 2016(b) statement and confirmed plan. Graham is ordered to disgorge

and repay the Debtor the $500 post-petition payment plus the sum of $1,000 as a sanction for his

false and inaccurate Rule 2016(b) statement.


## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).


## II. FACTS AND BACKGROUND

The material facts are not in dispute and the parties waived the opportunity for an

evidentiary hearing. The Court takes judicial notice of all papers filed by the parties and the case

docket. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (stating that in

resolving a motion to dismiss, a court can take judicial notice of matters of public record);

*Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) (noting that the bankruptcy judge did not

err by taking judicial notice of the schedules filed in the bankruptcy case); *Gen. Elec. Capital*

*Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (stating that the court can

-3-

take judicial notice of the contents of court records). These documents reveal the following undisputed facts. The Debtor, represented by Graham, filed a Chapter 13 petition on February 1, 2008. The filing was accompanied by the requisite schedules of assets and liabilities, statement of financial affairs, statement of current monthly income, certificate of pre-petition credit counseling and other related papers. The statement of financial affairs (the "SOFA") includes information pertinent to Graham's fees. In his answer to question nine of the SOFA, the Debtor states that he paid Graham $3,000 in November 2007, within a year preceding the commencement of this case relative to the preparation of the bankruptcy petition. Graham's Rule 2016(b) statement contradicts the Debtor's SOFA. In the Rule 2016(b) statement, Graham certifies: (1) he agreed to accept $3,000 for legal services in connection with the case; (2) prior to the filing of the Rule 2016(b) statement he only received $1,000; and (3) a balance of $2,000 remained due from the Debtor. As for Graham's costs, the Rule 2016(b) statement discloses that the fee agreement entered into by the Debtor did not include "attorney's costs." Further, these costs were not itemized or disclosed. It is most significant that Graham never amended his Rule 2016(b) statement.

The Debtor's Chapter 13 plan is also silent with regards to the supplemental fees and costs requested by Graham. On February 19, 2008, Graham filed a Chapter 13 plan for the Debtor. Several objections thereto were filed. In response, Graham filed several amended schedules and a modified plan on May 29, 2008. The modified plan was confirmed on June 6, 2008, and provides in pertinent part that all allowed, nonpriority unsecured claims are to be paid a minimum dividend of not less than 81%. The plan does not allocate any additional estimated disbursements for priority payments to Graham.

-4-

Graham filed his petition for supplemental fees and costs on January 2, 2009, which prompted the objections from the Debtor and the Trustee. The Debtor's objection discloses that he paid Graham an additional $500 in November 2008 for services regarding his parents' late proof of claim.

In his reply to the objections, Graham acknowledges that the Debtor has paid him a total of $3,500; that the initial retainer received was $3,000, not $1,000; and that post-petition he charged and received from the Debtor an additional $500. The reply contains an affidavit from Graham that summarizes the events leading up to and following the Debtor's bankruptcy petition. Graham also attaches an un-executed copy of an engagement agreement by way of a letter to the Debtor dated November 28, 2007. Graham contends this agreement sets forth the terms and conditions of his firm's representation of the Debtor. The letter sets forth a $3,000 retainer requirement, but provides that the engagement is not on a flat fee basis, as the Rule 2016(b) statement clearly infers. Rather, the letter sets forth an hourly rate fee structure, plus additional retainer requirements for specified services. The reply also provides an itemization of all services rendered by Graham, including the identity of the service providers, the time expended for the tasks performed, and the discounted rates charged. In addition, the reply itemizes and details the costs advanced. Graham seeks fees of $11,000 plus $486.25 in costs in the petition for supplemental fees and costs.

## III. DISCUSSION

The Court concludes that Graham's allowed fees should be limited to the $3,000 certified in the Rule 2016(b) statement. The Court requires Graham to disgorge and repay the $500 he

-5-

received from the Debtor post-petition without authorization from the Court, as well as an additional $1,000 for his false and misleading Rule 2016(b) statement. Disgorgement is reasonable and necessary as a sanction because Graham filed a materially false Rule 2016(b) statement and took an unauthorized additional fee from the Debtor. Moreover, the Court finds that even if the Rule 2016(b) statement had been accurate, the additional fees sought in Graham's petition for supplemental fees and costs are not allowed because the work performed in this case does not justify a fee of $11,000–a sum almost quadruple the fee disclosed in the Rule 2016(b) statement. Furthermore, the confirmed plan in this case specifically provided for $0 for additional priority payments to the Debtor's attorney. Because Graham was the drafter of that plan for the Debtor, he is held to the terms and conditions therein under 11 U.S.C. §1327(a). As such, Graham shall not receive any further payment under 11 U.S.C. § 1326(b)(1).

### A.    The Rule 2016(b) Statement Is Inaccurate and Misleading

Section 329(a) of the Bankruptcy Code requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the statement is to be filed and includes a provision requiring such disclosure "after any payment or agreement not previously disclosed." FED.R.BANKR.P. 2016(b). Fee disclosure under § 329 and the Rules is mandatory, not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002). Failure to disclose (in this case, fully and accurately disclose) is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. *See In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001). The extent to which compensation should be denied rests with the Court's sound discretion. *See Neben & Starrett,*

-6-

*Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995). Because disclosure under § 329(a) and Rule 2016(b) is central to the integrity of the bankruptcy process, this Court has held that failure to disclose is sanctionable. *In re Andreas*, 373 B.R. 864, 872-73 (Bankr. N.D. Ill. 2007). Many courts, perhaps the majority, punish defective disclosure by denying all compensation. *See, e.g., Park-Helena*, 63 F.3d at 882; *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *In re Griffin*, 313 B.R. 757, 764 (Bankr. N.D. Ill. 2004).

Whether the inaccuracies in the Rule 2016 statement are a purposeful failure to disclose or merely amount to a scrivener's error is clearly within the purview of the Court. Graham has offered no argument, much less any evidence, to show that the false Rule 2016(b) statement filed with the Court was simply a scrivener's error. The Rule 2016(b) statement on its face references a total fee of $3,000 and that a payment of $1,000 was made, not that the full $3,000 had already been paid and that this sum served merely as a retainer. Moreover, Graham failed to disclose to the Court that he was charging hourly fees for his services or that the total fee could exceed $3,000.

Graham has not offered any explanation for the marked variance in his Rule 2016(b) statement and the instant petition for supplemental fees and costs. However, even if the Court assumes a simple error was made by Graham, his actions are still sanctionable. Other attorneys in this district have been found negligent in failing to carefully proofread erroneous Rule 2016(b) statements before filing them. *See In re Gage*, 394 B.R. 184 (Bankr. N.D. Ill. 2008). Graham has unfortunately joined the ranks of those attorneys who failed to accurately certify what is required by Rule 2016. In short, the Rule 2016(b) statement is an attorney's certification on which the

-7-

Debtor, the Court, the Trustee, and the creditors rely. It is not a meaningless paper that attorneys can ignore or blithely treat as insignificant.

The impression Graham created by filing the inaccurate and false Rule 2016(b) statement is that a flat fee of $3,000 was charged to the Debtor for all services in the case. This inaccurate impression is corroborated by the confirmed plan, which failed to allocate any additional priority payments to Graham. Thus, the Court, the Trustee, and the creditors inferred and concluded at the time of confirmation, that no additional fees or costs were sought by Graham except for the $3,000 referenced in the Rule 2016(b) statement. Graham's request for an additional $7,500 in fees demonstrates that the Rule 2016(b) statement is materially and adversely misleading as well as wholly inaccurate.

It is not uncommon for attorneys to state on their Rule 2016(b) statements that they are billing on an hourly rate or that they have some other fee arrangement with their clients. In the case at bar, no such reference was indicated on the Rule 2016(b) statement. Moreover, Graham has not produced a signed copy of his alleged fee agreement with the Debtor. Further, in open court, the Debtor orally disputed signing a copy of the agreement attached to Graham's reply. Obviously, the Debtor's denial of any written fee agreement further detracts from Graham's position.

Most attorneys who represent Chapter 13 debtors in this district have shifted to the flat fee arrangement. *See generally In re Geraci*, 138 F.3d 314, 320-21 (7th Cir. 1998); Local Bankruptcy Rule Form 23c. While Graham is not required to utilize the flat fee arrangement, it appears that was Graham's intent. The amount in Graham's Rule 2016(b) statement is within the range of what most local practitioners charge to represent a Chapter 13 debtor. Graham's Rule 2016(b)

-8-

statement fairly implies the nature of his compensation arrangement with the Debtor was a flat

fee agreement. Because Graham contends that he was actually retained on an hourly rate basis,

it is incumbent upon him to clearly disclose this arrangement in the Rule 2016(b) statement.

Graham's cavalier approach to the truthfulness and accuracy of the Rule 2016(b) statement, like

other similarly situated attorneys, results in a sanction. *See In re Jackson*, Nos. 07 B 18515, 08

B 20776, 2009 WL 485091 (Bankr. N.D. Ill. Feb. 22, 2009).

     The Court finds denial and disgorgement of all Graham's fees to be unduly harsh in light

of the beneficial and successful work he performed for the Debtor. His efforts resulted in a

confirmed plan. The denial of all fees would produce a windfall to both the Debtor, who pays any

allowed fees from his plan, and to the unsecured creditors whose dividend would be effectively

increased by the amount of Graham's disallowed fees.

**B.**    **The Fees Charged by Graham Are Excessive**

     Section 329(b) effectively allows the Court to determine whether the fees charged are

excessive and, if so, the Court may cancel any compensation agreement between the attorney and

the client, or it may order the return of the excessive portion of the fees to the debtor's estate or

to the entity that made the payment. *See In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir. 1993).

In making this determination, courts are guided by 11 U.S.C. § 330 which sets forth a number of

factors that Congress found relevant to an assessment of the value of the services. *Id.* at 1128.

"Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it

is the attorney himself who bears the burden of establishing that the fee is reasonable." *Geraci*,

138 F.3d at 318. The legislative history for § 329 notes that "[p]ayments to a debtor's attorney

provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and

serious potential for overreaching by the debtor's attorney, and should be subject to *careful scrutiny.*" H.R. REP. NO. 95-595, at 329 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6285 (emphasis supplied). *See also Inv. Bankers*, 4 F.3d at 1565 (stating that § 329 is a disclosure provision designed to prevent attorneys from extracting more than their fair share from prospective debtors).

Because Graham's false Rule 2016(b) statement requires the disgorgement of a portion of his fees, a finding that the fees are excessive under § 329(b) is unnecessary. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045-46 (9th Cir. 1997); *Jackson*, 2009 WL 485091, at *5. Nevertheless, the Court finds that Graham's fees are in fact excessive, and disgorgement of a substantial amount is therefore appropriate even if Graham had filed an accurate Rule 2016(b) statement.

First, Graham and his four colleagues billed their services in minimum time increments of .25 hours. The Court and others judges in this district have consistently held such a practice to be inherently inflationary on the resulting bill. *See In re Stoecker*, 114 B.R. 965, 976 (Bankr. N.D. Ill. 1990); *In re Pettibone Corp.*, 74 B.R. 293, 302 (Bankr. N.D. Ill. 1987). For years, the Court has concluded that the appropriate minimum billing increment of .10 hours is appropriate. Accordingly a 10% reduction or $1,100 is appropriate.

Next, since May 1, 2007, the Court awards in flat fee cases (as this case appeared to be) compensation to Chapter 13 debtors' attorneys through case closing, not just through confirmation. *See* General Order No. 07-02. This change in the fee application allowance process was made in order to stem the tide of excessive post-confirmation fees sought by some attorneys to rachet up their fees at the expense of debtors and creditors. Graham's misleading Rule 2016(b)

-10-

statement led the Court, the Trustee, the Debtor, and the creditors to conclude that the fee

arrangement was of the flat fee variety. Therefore, the time charged post-confirmation by Graham

is disallowed. Since confirmation on June 6, 2008, Graham's fees total $1,779.60.

Further, Graham and his associates expended excessive time in this case in a number of

categories: means test preparation totaled 3.50 hours; preparation of the schedules totaled 13.75

hours; preparation for and attendance at the confirmation hearing totaled 6.75 hours; time spent

on amendments to the means test form and amended plan totaled 6.75 hours; and preparation for

a stay lift motion on a Hummer motor vehicle totaled 2.25 hours. These services total over

$5,250. The Chapter 13 practice in this district has been streamlined by the use of computer

software programs that require relatively little time to operate after input of the raw data and other

relevant information. This illustrates why the flat fee rate for a non-business Chapter 13 case

remains at $3,500. The instant application is almost quadruple that amount, and thus clearly

excessive.

No real explanation is offered by Graham for the use of so many personnel and the large

amount of time spent in this case. Such overstaffing smacks of over-billing similar to that

encountered in *In re Lund*, 187 B.R. 245 (Bankr. N.D. Ill. 1995). Certainly, nothing about this

rather run-of-the-mill case warrants a fee of $11,000. The inefficient use of time and services is

not fully compensable or allowable, and contradicts the spirit of Federal Rule of Bankruptcy

Procedure 1001's goal of the "inexpensive determination of every case and proceeding."

FED.R.BANKR.P. 1001.

This Court has previously held in *In re Lasica*, 294 B.R. 718 (Bankr. N.D. Ill. 2003) that

it will not allow post-confirmation attorney's fees in a Chapter 13 case where the allowance and

-11-

payment of those fees would "eviscerate" the promised dividend to unsecured creditors. *Id.* at 722. The Court adopts, incorporates by reference, and reaffirms its position in *Lasica*. The logic of *Lasica* equally applies to the instant case, where the requested fees would result in a materially reduced dividend to the creditors. As the Trustee noted, the effect of allowing Graham's fees in full would be to materially reduce the promised dividend to unsecured creditors from the minimum 81% reflected in the confirmed plan to the much lower dividend calculated at 54.7%.

## IV. CONCLUSION

For the foregoing reasons, the Court allows Graham the total of $3,000 in fees for his services in this Chapter 13 bankruptcy case as disclosed in the Rule 2016(b) statement. The balance of the requested fees and costs, including the $500 payment Graham received post-petition, is disallowed as excessive and contrary to the Rule 2016(b) statement and confirmed plan. Graham is ordered to disgorge and repay the Debtor the $500 post-petition payment plus the sum of $1,000 as a sanction for his false and inaccurate Rule 2016(b) statement.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: 3/25/9

John H. Squires
United States Bankruptcy Judge

cc:   See attached Service List

# SERVICE LIST

### Scott R. Kowalski
**Bankruptcy No. 08 B 02290**

Edward P. Graham, Esq.
Law Offices of Edward P. Graham, Ltd.
1112 S. Washington Street, Suite 212
Naperville, IL 60540

Mark W. Salkeld, Esq.
Law Offices of Edward P. Graham, Ltd.
1112 S. Washington Street, Suite 212
Naperville, IL 60540

Scott R. Kowalski
2472 Barkdoll Road
Naperville, IL 60565

Carolyn A. Suzzi, Esq.
Office of Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532